WILSON v. WILSON.—130 S. W. (2d) 140.

Eastern Section. February 11, 1939.

Petition for Certiorari denied by Supreme Court, July 1, 1939.

Lewis S. Pope, of Nashville, and C. S. Tollett, of Crossville, for appellant.

Roberts & Roberts, of Nashville, and G. M. Deck, of Crossville, for appellee.

AILOR, J.   Mrs. Viola Wilson brought this suit in the Chancery Court at Crossville on behalf of her minor son, Cordell Wilson, and in her own right against C. F. Wilson individually and as Trustee for Cordell Wilson.   The parties occupy the same relative position in this court as they did in the lower court and they will be referred

to as complainant and defendant according to their positions in the lower court. The suit involves certain conveyances and written documents executed by T. E. Wilson, deceased, for the purpose of disposing of his property during his lifetime.

T. E. Wilson was an old man at the time he executed the papers involved in this suit. He had been twice married, having four children by his first marriage and one by his last marriage. Complainant was his second wife and they had one child, Cordell Wilson. Defendant was a son of the first marriage. T. E. Wilson conceived the idea of dividing up his property during his lifetime, and it seems that he sought, by every means deemed by him to be advisable, to carry this idea into execution so that there would be no argument after his death. He had accumulated considerable estate in farming lands, some insurance and some business buildings in the town of Crossville, and some residence property in the same town. For some months prior to his death he carefully prepared deeds for the various pieces of real estate owned by him, naming. his children as grantees therein. Where one child received too much by conveyances according to his ideas of equality in the division of his property T. E. Wilson required such preferred child to execute a note or pay an amount thought necessary by him to equalize the distribution of his property. These facts are material in this suit only to the extent that they shed light upon the desire of T. E. Wilson to provide for a complete disposition of his property, and it is not necessary to go into the description of various items of property conveyed to his several children.

The plan of T. E. Wilson for disposition of his property seems to have been worked out in great detail to all of which he not only gave his careful attention, but he procured the services of his personal attorney. And it appears that he would not accept deeds prepared by his attorney until they met with his complete approval, it being necessary for his attorney to reform and correct them after they were written until they were completely satisfactory. In addition to seeking the aid of an attorney T. E. Wilson discussed with his wife, complainant herein, details of the disposition he was making of his real estate and she appears to have approved of his plans in all respects. This fact becomes material in this suit in the light of the insistence of defendant. The further fact that the widow received very little of the property of T. E. Wilson outright, that she signed all of the deeds and that she would be left without substantial consideration if the insistence of defendant is to be accepted is likewise most material.

Among the deeds executed by T. E. Wilson in favor of his various children was one to his son Cordell for a tract of mountain land of about 146 acres, known in the record as the Linary Farm. This deed was made outright to Cordell Wilson. He executed deeds to the defendant herein as trustee for Cordell Wilson for a one-third interest in what is known in the record as the Sequatchie Valley farm, and for. the property described in the record as the Harrison property

consisting of a large business building in Crossville. This building is divided into two store rooms. This last piece of property is the one involved in this suit. It is the insistence of defendant that he was the owner of a one-half undivided interest in this piece of property at the time of the execution of said deed by T. E. Wilson, and that the execution of said deed did not operate to divest him of said interest.

The deed to Floyd Wilson, Trustee for Cordell Wilson, for the one-third interest in the Sequatchie Valley farm provided that he should hold same as such trustee until Cordell Wilson became twenty-one years of age at which time the fee was to vest in said Cordell Wilson. During the period between the death of T. W. Wilson and the time Cordell Wilson reached his majority defendant was to pay the net returns from said one-third interest in the Sequatchie Valley farm to complainant to be used by her for Cordell as she deemed proper. The deed to the Crossville property, known in the record as the Harrison property, was to be held by defendant as trustee for Cordell Wilson until said Cordell Wilson became eighteen years of age, at which time title to same was to vest in said Cordell Wilson. The net earnings from this property between the death of T. E. Wilson and the date upon which Cordell Wilson became eighteen years of age were to be paid to the complainant to be used by her for Cordell and as she saw fit.

It appears from the record that T. E. Wilson had engaged in business with his son, C. F. Wilson, defendant herein, for many years prior to his death and that he had complete confidence in the honesty and fair dealing of his said son. We think it reasonable to presume from the established facts of the record that T. E. Wilson took C. F. Wilson into his confidence in winding up his affairs and the execution of the deeds to his property. At any rate after some months of work he completed the preparation and execution of deeds for disposing of his property, and on September 28th, 1932, he called his attorney to his home for preparing an agreement between himself and defendant. When his attorney suggested that he return to his office to draw the paper, T. E. Wilson directed him to sit down and write it with pen and ink according to his directions. This plan was followed and since this instrument plays so prominent a part in later transactions and is short we quote it in full, as follows:

"This contract entered into on this, the 28th day of September, 1932, by and between T. E. Wilson and C. F. Wilson, Witnesseth:

"That the said C. F. Wilson is to take charge of the real estate heretofore conveyed to him in trust for Cordell Wilson, look after, care for and handle and manage all of said property as his own, and to the best advantage as he sees and understands it, and from the Valley Farm he will pay to Cordell Wilson and his mother one-third of the net profits after paying all costs of operation, taxes and such other expenses as he deems necessary;

"From the mountain farm near Linary he will pay to said Cordell Wilson and his mother the net profits of said place, as above defined.

"From the town property in Crossville he will pay to the said Cordell Wilson and his mother the net profits, after deducting from the receipts for rents, the taxes, insurance and such other expenses as the said Floyd Wilson may deed necessary for the proper upkeep of the buildings.

"The said C. F. (Floyd) Wilson accepts this trust.

"T. E. Wilson,"
"C. F. Wilson."

On the same day the above contract was written T. E. Wilson had another contract prepared for the signature of himself and C. F. Wilson. This contract provided for the sale of personal property owned by T. E. Wilson and C. F. Wilson as partners and the disposition of the proceeds of such sale, same to be divided equally between the children of T. E. Wilson, after the payment of partnership debts.

When T. E. Wilson had completed the execution of deeds for the disposition of his property and the two contracts between himself and C. F. Wilson, he turned all of the instruments over to C. F. Wilson with the suggestion that he take them to the bank for safekeeping, and after his death to deliver them to the parties entitled thereto. T. E. Wilson died one month after the execution of the two trust instruments. And upon his death Floyd Wilson took the deeds and other instruments from the bank for delivery. He delivered all of the deeds except those in which complainant and Cordell were interested. After repeated requests from complainant defendant did deliver the deeds to which she and Cordell were bneficiaries to her about the middle of February, following the death of T. E. Wilson on October 28th, 1932. In the interim between the death of T. E. Wilson and delivery of said deeds, defendant had entered upon the discharge of his duties as trustee under the provisions of the deeds and trust instrument as above set out. However, he refused to account to Cordell Wilson and complainant for the entire receipts from the Harrison property as provided in the deed and the trust instrument signed by him, but set up a claim to a one-half interest in said property by virtue of a deed from one G. H. Harrison in which T. E. Wilson and C. F. Wilson were named as grantees.

It appears that G. H. Harrison executed a deed on January 1st, 1926, conveying to T. E. Wilson and C. F. Wilson the property now in question for a recited consideration of $12,000.00. Defendant claims that he took a one-half undivided interest in the property by virtue of this deed and the payment of one-half of the purchase price. In the answer of defendant, which is filed as a cross-bill he definitely states the source of the money used in payment of the purchase price of this property as follows:

"When this Crossville property in litigation was purchased from

G. E. Harrison on January 1, 1926, the partnership which operated under the style of T. E. Wilson and son, had considerable assets, and this property was paid for in full out of partnership assets. One-half of said purchase price was paid by this defendant and one-half by T. E. Wilson, by reason of the fact that the entire purchase price was paid to G. E. Harrison out of the partnership funds of T. E. Wilson & Son.''

██ Cross-complainant demanded a jury to try the issues in the cause, and two issues were submitted in connection with payment of the purchase price of the property in question. The first was whether or not T. E. Wilson paid the full purchase price, and the jury answered in the negative. The next was whether or not defendant and cross-complainant paid one-half of the purchase price for the property and the jury answered this question in favor of defendant and cross-complainant. It is now insisted that this finding of the jury is conclusive of the question of payment of the purchase price for the property in question, but we think it is without legal effect.

The question propounded to the jury was as follows:

''Did C. F. Wilson pay one-half the purchase price of the Harrison property in question, as the defendant insists?''

The only insistence of defendant so far as the issues in this case are concerned are those set forth in the answer and cross-bill as above set out in which he says the purchase price was paid out of partnership funds. This averment is not supported by a single syllable of evidence. In fact, no attempt is made to support this insistence. Defendant's failure to make any effort to support the averments of his answer and cross-bill in this connection most likely results from the fact that complainant proved without any hope of successful contradiction that T. E. Wilson gave his personal check for $10,000 of the purchase price. Payment of the other $2,000 is not specifically shown by any evidence in the record. When defendant was confronted with this situation he definitely sought to abandon the position he had taken in his answer and cross-bill, and when he gave his testimony he set up an entirely different state of facts from that relied upon in his pleadings. He testified over objection of complainant that he entered into a contract for doing a logging job for his father at New River, and that his father agreed to give him a $5,000 bonus for doing this logging job, and that this amount was applied by his father in payment of his one-half interest in the property in question.

We think this testimony was improperly admitted by the Chancellor. It was objectionable for two reasons, first because it was at variance with and contradictory of the averments in the answer and cross-bill of defendant and cross-complainant. It was immaterial for the reason that it was not responsive to any issue made by the pleadings. Cross-complainant had elected to set up a particular mode of payment, and he was bound by the averments of his pleadings. It is well set-

tled in this state that a party to a suit is bound by the averments of his pleadings in that suit. This rule seems to be so definitely established that our state Supreme Court announces it as a settled rule without citation of authority. Murray v. Nelson, 145 Tenn., 459, 239 S. W., 764, 21 A. L. R. 1392. To permit a litigant to allege one state of facts and then testify and rely upon an entirely different state of facts would open the door for all manner of deception and fraud: A court of equity will not permit of such procedure, and we think it necessary to conclude that there was no evidence to support the findings of the jury on this issue and that its findings are in no way binding upon this court in connection with this issue.

There is an additional reason why the testimony of defendant in this connection was admissible. His testimony was secondary evidence of facts shown to have been in writing by his introduction of a written contract embracing the contract between himeslf and father for the logging job. Instead of an agreement by T. E. Wilson to pay defendant a bonus of $5,000 as testified to by him, the written contract provided that he was to be paid a bonus of $500. This contract was signed by defendant, and was not only the best evidence of the provisions of the contract between himself and father, but it was conclusive as to the provisions of the contract. "The rule that a written contract must prevail over previous or contemporaneous contradictory representations is not merely a rule of evidence but is a 'rule of substantive law.'" Deaver v. J. C. Mahan Motor Co., 163 Tenn., 429, 43 S. W. (2d), 199.

We think this rule is specially applicable in the case before us. Defendant not only establishes the fact that there was a written contract entered into between himself and his father for the logging job, but he introduces that contract. This written contract directly contradicts his testimony. It would be most unwise to permit a party to a contract to contradict the express terms of such contract, especially when the mouth of the other party to the contract has been closed by death. With this evidence excluded there is no proof in the record that defendant paid any of the purchase price of the property in question. But on the contrary it is established by documentary evidence that T. E. Wilson paid at least $10,000 of the purchase price, and under the facts shown we think there is a presumption that the entire purchase price was paid by him. It definitely appears that he claimed ownership of all of this property, and attempted to convey it by warranty deed in which defendant was named as trustee. We find as a fact, the report of the jury notwithstanding, that T. E. Wilson paid the purchase price of the property in question.

There are other reasons why the deed from T. E. Wilson to defendant as trustee for the whole of this property should be sustained. The other property conveyed to Cordell Wilson was of small value in comparison with the property in question. The income from this property was to go to Cordell Wilson and complainant to be

used by complainant as she saw fit. She joined in the deeds to all of the children of T. E. Wilson including defendant as a connected program. Complainant was left without substantial consideration outside the provision that the proceeds of this and other property held by defendant as trustee should be paid to her for the use of herself and Cordell Wilson. This constituted a material consideration without which it will not be presumed that complainant would have executed deeds by which defendant benefited.

Defendant admits that his father talked with him frequently about how he was going to divide his property. He was present when the trust agreement of September 28th was signed by himself and father after it was prepared by Mr. Wilson's attorney. The provisions of this agreement were such as to constitute notice to defendant of the nature of the obligation he was assuming. He was present when this agreement was read over after it was prepared and will not be heard to say that he did not know its contents. It was definite in its provisions as to the property which defendant was to administer as trustee, and the extent of the interest which Cordell was taking in the several pieces of property. In the pieces of property where Cordell took less than the whole the trust agreement of September 28th so specified, so that it will be concluded that defendant knew at the time he signed this agreement that it provided for his administering the Harrison property for the sole benefit of Cordell Wilson and his mother. At any rate the contents of this instrument were sufficient to put him upon inquiry as to the contents of the deed conveying this property. He knew that his father was making deeds for all of his property, and his agreement to pay to Cordell Wilson and his mother the net profits from the Harrison property under the circumstances operated as an election.

It is true that the doctrine of election has usually been applied where a single instrument is involved. However, we think the several instruments executed by T. E. Wilson and complainant together with the two trust instruments executed by T. E. Wilson and defendant go to make up the contract between the parties in this case and that the whole is so related as to be one transaction so far as the rights of the parties are concerned. Mrs. Wilson executed deeds virtually divesting herself of any interest in the estate of T. E. Wilson in view of and in consideration for the execution of deeds by T. E. Wilson in favor of her son, Cordell Wilson. Under the provisions of the deeds and the trust arrangement complainant took an interest in these conveyances until Cordell Wilson arrived at eighteen years of age. Defendant took valuable property by deeds executed by T. E. Wilson and complainant as a part of this arrangement and he does not now disclaim the rights provided in these deeds. So far as the rights of the parties are concerned the fact that more than one deed was executed does not alter their position or affect the legal consequences. The result would be the same as if a single deed or con-

tract had been entered into. The rule is well settled that a party cannot claim benefits under an instrument without at the same time becoming bound by all of its provisions. This rule is recognized by the Supreme Court of Tennessee in numerous reported opinions.

██ "One entitled to a benefit under an instrument, whether it be a will or a contract . . . must abandon every right the assertion whereof would defeat even partially the provisions of the instrument. A party cannot occupy inconsistent positions, but will be confined to his election." Louisville & N. R. R. v. Iron Co., 118 Tenn., 194, 101 S. W., 414, 417.

A similar rule prevails in Federal Courts. And while it is true that the rule has never been one of popular application by courts, it is firmly established and courts should not hesitate to invoke its operation where the ends of justice demand. Peters v. Bain, 133 U. S., 670, 10 S. Ct., 354, 33 L. Ed., 696.

The doctrine of election has been specially applied to a situation where a testator makes provision for a beneficiary and at the same time attempts to dispose of property belonging to the beneficiary. It has been directly held that the beneficiary could not claim the benefit of the will without at the same time consenting to the passing of his own property pursuant to the provisions of the will under which he elects to take. Parkey v. Ramsey, 111 Tenn., 302, 76 S. W., 812.

We think the reasons for application of the rule of election is much stronger in the instant case than would be found in the ordinary will case. In the first place defendant signed the trust agreement by which he agreed to pay the net proceeds of this property to Cordell Wilson. And this coupled with the fact that complainant surrendered what claims she might have had to homestead and dower, year's support, etc., in the property of T. E. Wilson on the strength of the arrangement constitutes a strong circumstance in support of the propriety of invoking the rule. It is true that defendant insists he did not know the full meaning of the trust agreement at the time he signed it. We find it unnecessary to pass upon this question at this time, for the reason that he did learn of its contents prior to the time this suit was instituted and he still insists upon his claim to benefits under the deeds executed to him, but refuses to abide by the provisions of deeds in favor of Cordell Wilson, all of which constituted one comprehensive transaction.

However, the fact that defendant surrendered all of the other deeds to parties entitled to them except those in which complainant and Cordell Wilson were interested within a very short time after the death of T. E. Wilson, and that he delayed delivery of these deeds for months after his father's death and then only after repeated demands creates a suspicion that he was not acting in the utmost good faith. We think the court would be warranted in concluding that he learned of the conditions in the deed in question and that this was the

reason for delay in delivery. But he does not offer to renounce claims under the deeds to himself.

It appears most conclusively that T. E. Wilson was fully aware of the fact that the deed for the Harrison property named himself and defendant as grantees. This fact was called to his attention. Mr. Keyes, attorney for Mr. Wilson, says he called to Mr. Wilson's attention the fact that the deed named himself and defendant as grantees and that the deed he was executing operated to convey the entire title to defendant as trustee for Cordell. The substance of his answer was that this was his business and that he understood what he was doing; that defendant had either already executed a deed releasing any claim he might have in the property or that he would do so. The admission of this evidence was objected to by defendant and is made the basis of an assignment of error at this time. However, we think this testimony was properly admissible as a part of the res gestae. This constitutes a well defined exception to the rule against hearsay evidence. The statements were made contemporaneously with the execution of the deeds and do not stand as ordinary hearsay evidence. This rule is amply stated in Ruling Case Law as follows:

"Declarations of the parties made with regard to matters of business, if contemporaneous with the acts they tend to explain and qualify, are admissible as parts of the res gestae. Hence the declarations made by the grantor in a deed of trust at the time of its execution are always admissible. Similarly, the declarations of a grantor made at the time of execution of a deed, as to the consideration, are admissible to prove the consideration of the deed. . . . In the same manner declarations of a testator, made at the time when he executed and delivered an instrument alleged to be a codicil, are a part of the res gestae." 10 R. C. L., page 983, Sec. 165.

It further appears that T. E. Wilson had collected rents from this particular property from the time of its purchase to the time of his death, and that he had never accounted to defendant for any portion of the rents therefrom. So that the legal effect of this situation was that T. E. Wilson was in possession of this property, and that the execution of the deed by him for the entire interest in the property and the other declarations complained of were declarations of ownership by a party in possession. Such declarations are generally admissible. 10 R. C. L., Sec. 166.

Reverting now to the first issue submitted to the jury as to whether or not T. E. Wilson paid the entire purchase price of the property in question, we think this question becomes immaterial in the light of our conclusions above announced. Defendant is not concerned at this time as to this issue. And the same is true as to other issues submitted to the jury. Numerous other questions are raised and propositions argued by appellant as grounds for reversal of the decree of the lower court. . We think it not necessary to deal with them in

detail, as we have discussed what we conceive to be the controlling issues in the case.

Cross-complainant has filed the record for error and has assigned errors on certain specific actions of the Chancellor. The first error assigned is based on the action of the Chancellor in overruling demurrer of defendant to the original bill as amended. We think it not necessary to prolong this opinion to the extent of treating this question in detail, as such treatment is not necessary at this time. We have considered this case in its broad aspect and from an equitable viewpoint. In doing so we have considered only those legal questions necessary to the ends of justice as we view them. It is not necessary to consider other legal questions not controlling of the final result. The demurrer deals with that portion of the original bill as amended seeking a reformation of the deed from Harrison to defendant and his father. A ruling on this question would not alter our conclusions and will not be further considered.

Other errors are assigned on the alleged wrongful admission of evidence by the Chancellor. We have already discussed and passed upon the second error assigned which questions the only evidence which we have found it necessary to consider in deciding the issues of this case. Other evidence complained of, if wrongfully admitted, did not result in injury to defendant and is not material at this time. It results that all errors assigned by defendant will be overruled. The decree of the lower court will be reversed and a decree entered in this court in favor of complainant. Defendant will pay the costs of the cause.

Portrum and McAmis, JJ., concur.