Argued December 18, 1945; modified January 22, 1946

## McGINN ET AL. *v.* GILROY ET AL.

(165 P. (2d) 73)

Before Belt, Chief Justice, and Kelly, Bailey, Lusk and Hay, Associate Justices.

*Earl S. Nelson,* of Portland (C. A. Beckman and Griffith, Peck, Phillips & Nelson, all of Portland, on the brief), for appellants.

*Arthur H. Lewis,* of Portland, for respondents.

BAILEY, J. This suit was brought by Edward E. McGinn, Edith M. McGinn, and John L. McGinn, trustees of a certain trust designated, for convenience, as "McGinn Estate Company", and by them and others, as beneficiaries of that trust, against Herman Gilroy and Helen H. Gilroy, his wife, individually and as executors of the estate of Marguerite Pater, deceased, for a decree establishing an agreement between Louise McGinn and Marguerite Pater to execute mutual and reciprocal wills, for specific performance thereof, and to require the defendants Herman Gilroy and Helen H. Gilroy to account for all the property received by them from Marguerite Pater during her lifetime, and as beneficiaries under her will. From a decree in favor of the plaintiffs, the defendants have appealed.

It is the contention of the plaintiffs that Louise McGinn and Marguerite Pater entered into a contract whereby they agreed to make mutual and reciprocal wills; that such wills were made; that upon the death of Mrs. McGinn, Miss Pater had, as devisee and legatee, received all of her estate, except $100 which had been bequeathed to a mutual friend, and that thereafter, in disregard of their mutual agreement, Miss Pater had revoked her will made pursuant thereto and had transferred, during her lifetime, or devised and bequeathed by her last will to the defendants all of her own property and that received from the estate of Mrs. McGinn.

The complaint alleges that Henry E. McGinn and Louise McGinn, his wife, had agreed between themselves that Henry E. McGinn would die intestate, and, in the event of his death before that of his wife, she, as his only heir, "was to inherit his estate as widow, and was to have, during her lifetime, the full use and possession" thereof on the condition that she would "by last will and testament, bequeath and devise said estate and property remaining" in her possession, or to which she was entitled at the time of her death, to his surviving brothers and sisters; that Henry E. McGinn predeceased Louise McGinn, and she inherited all of his estate; that thereafter, in order to carry out the understanding and agreement which she had had with her late husband, Louise McGinn entered into an understanding and agreement with her sister, Marguerite Pater, wherein Miss Pater promised and agreed that in consideration of Louise McGinn "making and executing a will whereby she would devise and bequeath to the said Marguerite Pater all of the property which she might own or be possessed of at the time of her death, * * * the said Marguerite Pater would * * * make and execute a will whereby she would devise and bequeath to the plaintiff, Edith M. McGinn, for the benefit of these plaintiffs, all the property of every kind which she might own, * * * at the time of her death."

In pursuance of that agreement, Louise McGinn did, on the 23rd day of October, 1936, make and execute a will in favor of Marguerite Pater, a copy of which will is set forth in the complaint. The second and fourth paragraphs thereof are as follows:

"Second, I give and devise and bequeath Lots numbered Eleven (11) Twelve (12) and Thirteen (13) in Block numbered Four (4) Maegley High-

land, as the same is known and designated upon the maps and plats of Maegley Highland Addition to the City of Portland, County of Multnomah and State of Oregon, and structures thereon, to my sister Marguerite Pater, of Portland, Oregon.

\* \* . \* \* \*

"Fourth, I give, devise and bequeath to my sister, Marguerite Pater, all the rest, residue and remainder of my property, real, personal and mixed and of every kind and nature whatsoever of which at the time of my decease I may be possessed or to which I may be entitled and/or which any person or persons have or hold or may be entitled to have or hold in trust for me, to have, hold, possess and dispose of the same for her own use and benefit absolutely. In making this last bequest and devise to my sister, Marguerite Pater, she has agreed with me that she will by her last will and testament bequeath and devise to Edith M. McGinn, as trustee for the McGinn Investment Co., an Oregon corporation, any and all of the property herein by me devised and bequeathed to her, the said Marguerite Pater, that may remain in her possession at the time of her death."

Mrs. McGinn's entire estate, with the exception of $100 bequeathed to Mrs. L. L. Little by the third paragraph of her will, was devised and bequeathed to Miss Pater.

It is further alleged that in pursuance of such agreement, and on the 23rd day of October, 1936, Miss Pater executed her last will and testament, a copy of which is also set forth. In the first paragraph thereof she directs that all her just debts and expenses of administration be paid. The next two paragraphs are as follows:

"Second. All the rest, residue and remainder of my property and effects, real, personal and mixed, and wheresoever situated, and of every

nature and kind whatsoever of which at the time of my decease, I may be possessed or to which I may be entitled and/or which any person or persons have or hold or may be entitled to have or hold in trust for me at the time of my decease, I give, devise and bequeath unto my sister, Louise McGinn of Portland, Oregon; provided, that if my sister, Louise McGinn, shall not before her death have sold and conveyed or otherwise disposed of Lot numbered One (1) in Block numbered Two (2) in Shinn's Addition to the City of Portland in the County of Multnomah and State of Oregon, and if my friend, Mrs. L. L. Little, be living at the time of the death of my said sister, then and in that event I give and devise said lot to the said Mrs. L. L. Little.

"Third. In the event of the death of my sister Louise McGinn before my death, then and in that event, I give, devise and bequeath all the rest, residue and remainder of my property and effects, real, personal and mixed, and wheresoever situated, and of every nature and kind whatsoever of which at the time of my decease, I may be possessed or to which I may be entitled and/or which any person or persons have or hold or may be entitled to have or hold in trust for me at the time of my decease, I give, devise and bequeath unto Edith M. McGinn in trust and as trustee for the McGinn Investment Co., an Oregon corporation, excepting only the above described Lot One in Block Two, Shinn's Addition to the city of Portland."

The complaint next alleges that Mrs. McGinn died on the 20th day of January, 1942, at which time both of the wills hereinbefore mentioned "were in full force, unrevoked and unchanged"; that Miss Pater caused the hereinbefore mentioned will of Mrs. McGinn to be admitted to probate; that she was appointed executrix thereof and duly qualified, and that upon the settlement of that estate Miss Pater received all the prop-

erty which Mrs. McGinn owned or was entitled to at the time of her death. It consisted of cash in three banks, corporate stock, bonds, household furniture, 1940 Chevrolet automobile, and lots 11, 12, and 13 in block 4, Maegley Highland, an addition within the limits of the city of Portland, Oregon.

It is further alleged that thereafter, in order to defraud the plaintiffs, Miss Pater "revoked, annulled and destroyed her will theretofore made in pursuance of said agreement," and on October 13, 1942, executed a new will wherein she bequeathed and devised all of her property to the defendants Herman Gilroy and Helen H. Gilroy; that on the same day, to wit, October 13, 1942, she executed a deed purporting to convey to the defendants lots 11, 12, and 13, in block 4, Maegley Highland.

It is then stated that Miss Pater died on the 30th day of April, 1943, and that thereafter and on the 11th day of June, 1943, the will executed by her on October 13, 1942, was admitted to probate and defendants Herman Gilroy and Helen H. Gilroy were appointed and qualified as executors thereof, and were proceeding with the administration of the estate, claiming the entire property included in the estate as their own.

According to the allegations of the complaint, the plaintiffs are the beneficiaries of a trust, operated and conducted under the designation of McGinn Estate Company, and, in the operation of that trust, the plaintiffs have been commonly known and described as McGinn Investment Company, a corporation, by reason of the fact that prior to October, 1922, the property acquired by the plaintiffs from their parents was held by an Oregon corporation known as McGinn Investment Company; that upon the dissolution of that

corporation in 1922, the property of the investment company was transferred to trustees of a trust known as the McGinn Estate Company, and that in 1936, at the time the mutual wills were executed, both ''Louise McGinn and Marguerite Pater were under the impression that the name of the organization under which plaintiffs were functioning, was the McGinn Investment Company.''

The prayer of the complaint has been hereinbefore sufficiently set forth.

In their answer defendants admit that Louise McGinn and Marguerite Pater were sisters; that Henry E. McGinn and Louise McGinn were husband and wife without issue, and that Henry E. McGinn died on the 27th of February, 1923; that the individual plaintiffs are the surviving brothers and sisters of Henry E. McGinn, deceased; that Marguerite Pater was, during her lifetime, a resident of Portland, Oregon; that she died on the 30th of April, 1943; that the will executed by her on October 13, 1942, was admitted to probate in Multnomah county; that defendants Herman Gilroy and Helen H. Gilroy were appointed executors thereof and have qualified and are acting as such executors, and that the defendants, in the capacity of executors, ''have taken possession of and now hold certain property as described in the inventory and appraisement filed in the estate of'' Marguerite Pater, deceased. The answer denies all the other allegations of the complaint.

The circuit court decreed as follows: That the agreement set forth in the complaint between Louise McGinn and Marguerite Pater be specifically performed by the defendants ''by paying, delivering and turning over to plaintiffs herein, all of the property and assets of the Estate of Marguerite Pater, deceased, after deducting therefrom expenses of the last illness,

funeral expenses and expenses of probate to date hereof''; that the defendants, within ten days from the date of the decree, execute and deliver to the plaintiffs a good and sufficient conveyance of lots 11, 12, and 13, block 4, Maegley Highland, and ''upon their failure so to do, that this decree stand in lieu of and as a conveyance of said real property,'' and that the ''defendants personally, and as executor and executrix, render, furnish and give plaintiffs a full and complete accounting of all properties received, acquired, or coming into their possession from the said Marguerite Pater or her said estate''.

There is no evidence in the record of any agreement between Henry E. McGinn, formerly circuit judge for Multnomah county, and his wife, Louise McGinn, as alleged in the complaint. She survived him and inherited his entire estate.

In 1907, and before her marriage to Judge McGinn, Mrs. McGinn, under the name of Louise Summers, acquired title to lots 11, 12, and 13 in block 4, Maegley Highland. After their marriage, a residence was built on this property and Judge and Mrs. McGinn were residing thereon at the time of his death in 1923. In 1921 the title to this property, which is the principal real estate involved in this proceeding, together with other real property situate in Multnomah county, Oregon, was placed in the names of both Judge and Mrs. McGinn as tenants by the entirety.

The property which Judge McGinn and his brothers and sisters received from their parents was transferred by them to McGinn Investment Company, an Oregon corporation, organized in July, 1914, the stock in which was owned by them, and was managed by that corporation until September 12, 1922, when the assets of the corporation were transferred to Judge McGinn,

and his sisters, Anna M. Shea and Edith M. McGinn, as trustees of a trust designated as McGinn Estate Company. The McGinn Investment Company was voluntarily dissolved on September 13 of that year.

After the death of Judge McGinn, and on the 17th day of April, 1923, an agreement was entered into between his widow, Louise McGinn, and the trustees of the McGinn Estate Company, whereby the trustees, in consideration of the conveyance by Louise McGinn to them of certain real property, agreed to pay her, beginning April 1, 1923, "an annuity or yearly sum" of $7,200 in monthly installments of $600 each during her lifetime, and, upon her death, to pay to her sister, Miss Pater, an annuity or yearly sum of $1,800 in monthly installments of $150 each.

Shortly after Judge McGinn passed away, Miss Pater moved into the McGinn home in Maegley Highland, the two sisters living together there until Mrs. McGinn's death in January, 1942.

In the early part of October, 1936, Louise McGinn and Marguerite Pater called at the law office of W. S. U'Ren to consult him about preparing wills for them. He had been their legal adviser for a number of years. After instructing him what to include in their wills, they left, returning about a week later, when the wills, as prepared by Mr. U'Ren, were read to them. They thereupon executed the wills in the presence of two witnesses. These are the wills hereinbefore referred to and from which excerpts have been quoted.

Mr. U'Ren testified that his memory was not very good. However, he was quite positive that both Mrs. McGinn and Miss Pater were present at the time instructions were given to him as to the contents of the wills and later when they were executed. Mr. U'Ren stated that they knew what they wanted in their wills

when they first consulted him about them. He did not think they had discussed any agreement concerning the execution of mutual wills in his presence.

Mrs. McGinn died on the date alleged in the complaint. At that time both of the 1936 wills "were in full force, unrevoked and unchanged". Miss Pater caused Mrs. McGinn's will to be admitted to probate and had herself appointed executrix thereof. The estate was first appraised at $20,027.51, and consisted mostly of cash in banks, stocks and bonds, and lots 11, 12, and 13, block 4, Maegley Highland, which real property was appraised at $6,500. Thereafter, and when the estate was about to be closed, it was discovered that Mrs. McGinn owned an undivided one-half interest in lot 1, block 2, Shinn's Addition to the city of Portland, which lot she and Miss Pater had inherited from their deceased sister, Julia Mantelli. The undivided one-half interest belonging to Mrs. McGinn's estate was appraised at $1,750. With the exception of the $100 bequest to Mrs. Little, all of the estate of Mrs. McGinn, after payment of debts and expenses of administration, was received by Marguerite Pater. The order closing the estate was entered on October 19, 1942.

On the 9th day of October, 1942, Mr. U'Ren, at the request of Miss Pater, wrote with ink, along the margin of the last page of Miss Pater's 1936 will, the following: "I hereby cancel and destroy this will and hold it for naught. Dated this 9th day of October, 1942." Then appears the signature of Marguerite Pater, and under that signature, also written by Mr. U'Ren, is the following: "Witness to the signature of Marguerite Pater."

Mr. U'Ren further testified that when Miss Pater told him that she wanted a new will made, after revok-

ing her 1936 will, he told her he "couldn't do it and gave her reasons for it." In this respect he testified as follows:

"Q. Now, will you state what you gave to Miss Pater in the presence of Mr. Gilroy as your reasons why you would not prepare a second will for Marguerite?

A. Why, I am not quoting the language, of course, at this time, but in substance I know I said that I couldn't prepare that will for her because there would be trouble about this estate, and I would be a witness, be sure to be, if there was trouble, and an important witness, and while I didn't mind going on the witness stand to testify to some immaterial matter, perhaps, or something that didn't affect the merits of the case, this was important, and I couldn't take part in it.

Q. Did you tell them where trouble would arise, wherein the trouble would arise, or why there would be trouble, Mr. U'Ren?

A. No, I don't think I did at that time, but in the course of conversations I had said that Mr. Gilroy had made a mistake, and that is what I was basing my opinion that there would certainly be trouble."

Mr. U'Ren stated that when the safety deposit box belonging to Mrs. McGinn was opened, after her death, several letters were found therein written to Judge McGinn by ex-President Theodore Roosevelt, and plaintiff John L. McGinn requested that the letters be turned over to him, "And Marguerite turned to Mr. Gilroy and asked whether she should give it up or not—John had asked for it. Mr. Gilroy said 'No.' That was all that was said about it, but I knew the McGinns pretty well, and I counted that there would be trouble over that incident."

At the request of Miss Pater, Mr. U'Ren recommended another attorney who prepared a new will for her which she executed on October 13, 1942. In this will, she left all of her property to defendants Herman Gilroy and Helen H. Gilroy, his wife. On the same day she executed a deed conveying to defendants lots 11, 12, and 13 in block 4, Maegley Highland, and executed a bill of sale transferring to the defendants "all of the furniture and furnishings, including cooking equipment, garden equipment, now contained" in the residence on lots 11, 12, and 13, in block 4, Maegley Highland. In both the deed and the bill of sale, she reserved the right to use the property described therein for the rest of her life. Prior to the execution of the last mentioned instruments, Miss Pater had, in July, 1942, given to the defendant Herman Gilroy the Chevrolet automobile which she had received as part of the estate of Louise McGinn, deceased.

Miss Pater was approximately 78 years old at the time of her death. Her estate was appraised at $2,740.21, consisting of $875.21 in the bank, the north 20.5 feet of west 72 feet of lot 1, block 2, Shinn's Addition, appraised at $1,800, and $65 owing to the estate. Listed in the inventory, with their appraisals "for convenience of Inheritance Tax Dept. for tax purposes", was the following: 1940 Chevrolet automobile, $700; furniture and furnishings, $500, and lots 11 to 13, inclusive, block 4, Maegley Highland, $5,000.

Prior to taking up her residence with Mrs. McGinn, Miss Pater conducted a millinery store in Portland. Early in 1923 she disposed of her business and moved her furniture to the McGinn home. The record is silent as to what assets she had at that time other than her furniture and the one-half interest in lot 1, block 2, Shinn's Addition.

Defendant Gilroy was 40 years old in March, 1945. At the age of 11 or 12 years he began to do odd jobs for Judge McGinn. He "chopped the kindling, and got the fire-place wood up, and just any little chores that they could create for a youngster of that age." About six months after Judge McGinn's death, his widow purchased an automobile, and from then until her death he was employed steadily by her on a fixed weekly salary. In explaining the work he performed for her, he testified as follows:

"A. I chauffeured and I done little chores around there and took them on trips, many, many trips all over the country, and I taught her to drive.

 * * * * *

Q. Now, did you take your meals at the —
A. As soon as I went to work steady for her, yes.
Q. ——at Mrs. McGinn's place?
A. Yes, that is right.

 * * * * *

Q. When you say you took your meals there, did you eat with Mrs. McGinn and Miss Pater?
A. I ate with them just like one of the family."

In 1930, the defendants were married. Upon Mrs. McGinn's death in 1942, they, at the request of Miss Pater, moved into the McGinn home, where they have since resided.

Mr. Gilroy testified that he never heard Mrs. McGinn "at any time say that she had any agreement with reference to that home, that it was to go to the McGinn estate, or McGinn heirs." He further stated that she had told him many times, in the presence of Miss Pater, that the house would become his upon the death of the survivor of the two sisters. He did not

remember whether Mrs. McGinn made any of those statements before 1936. Mrs. Gilroy testified that she had "heard Mrs. McGinn say on numerous occasions that home was to be my husband's and ours." She heard the matter first discussed about 1933 or 1934.

In referring to the property transferred to him by Miss Pater during her lifetime, Mr. Gilroy gave the following testimony:

"Q. Now, you got the transfer of this car. When was that given to you, Mr. Gilroy? Was that given to you on the 13th of October also?

A. Oh, no. That was very much prior to that.

Q. Much prior to that?

A. Yes. I believe that was in June, July, or something like that.

\* \* \* \* \*

Q. Was that a gift, or did you pay something for it?

A. That was a gift.

Q. And this furniture, was that a gift?

A. That was a gift. You wouldn't call it a gift. It would be for services rendered and all that sort of thing, if you want to put it that way.

Q. And this deed that was prepared on October 13, 1942, how much cash did you pay for that, Mr. Gilroy?

A. Ten dollars.

Q. You actually gave her ten dollars?

A. That is right.

\* \* \* \* \*

Q. What is the value of that property out there?

A. Well, I would say about four thousand, forty-five hundred.

Q. And that ten dollars was the sole consideration, there, was it?

A. Through the different endeavors that I had done for those people, that was the consideration, yes.

Q. If she was to give it to you why did you have to give her ten dollars in cash, Mr. Gilroy?
A. Well, isn't that legal? I don't know."

Both Mr. and Mrs. Gilroy testified that they heard Mrs. McGinn's will read before it was probated and knew its contents.

■ The term "mutual wills" is properly, and here, used to describe documents of a testamentary character, executed in pursuance of an agreement or arrangement between two or more persons to dispose of their property either to each other or to third persons in a particular mode or manner. 69 C. J., Wills, § 2714, p. 1297; 1 Jarman on Wills, 7th Ed., p. 44; *Maurer v. Johansson,* 223 Iowa 1102, 274 N. W. 99; *Edson v. Parsons,* 155 N. Y. 555, 50 N. E. 265. There are, however, cases in which the word "mutual" is "used of wills executed in accordance with a common intention, but not in performance of any contract between the parties." 1 Page on Wills, Lifetime Ed., § 102, p. 220; see also *Sappingfield v. King,* 49 Or. 102, 109, 89 P. 142, 90 P. 150, 8 L. R. A. (N. S.) 1066; *Taylor v. Wait,* 140 Or. 680, 684, 14 P. (2d) 283.

■■ Plaintiffs are seeking to enforce an alleged contract pursuant to which it is asserted that the 1936 wills were executed. In this class of cases, the ordinary rules of law which govern in suits to compel specific performance of contracts, and which furnish reasonable safeguards against fraud, are rigidly enforced. *Sappingfield v. King,* supra; *Edson v. Parsons,* supra. These rules require that the contract be definite and certain in all its parts; that it be mutual; that it be founded upon an adequate consideration, and that it be established by clear and convincing evidence. See cases last above cited, and *Holman v. Lutz,* 132 Or.

185, 282 P. 241, 284 P. 825; 69 C. J., Wills, § 2722, p. 1300.

The 1936 wills were executed by Mrs. McGinn and Miss Pater on the same date and at the same place. Both Mrs. McGinn and Miss Pater knew what was contained in the other's will at the time they were executed. The wills contained reciprocal provisions; that is, Mrs. McGinn left her entire estate, with the exception of $100, to Miss Pater. She, however, made no disposition of her property in the event Miss Pater should predecease her. By her 1936 will, Miss Pater left her entire estate to Mrs. McGinn. In the event that Mrs. McGinn did not survive her, Miss Pater devised and bequeathed her entire estate, with the possible exception of lot 1, block 2, Shinn's Addition, to Edith M. McGinn, as trustee.

There is no direct evidence of any oral contract between them for the execution of mutual wills. Mr. U'Ren did not hear that matter discussed. All that he could remember was that he prepared the wills according to instructions given to him.

Mrs. McGinn, in the fourth paragraph of her will, specified the terms of the agreement, as she understood them, between herself and her sister, Marguerite Pater. In that paragraph she devised and bequeathed to Miss Pater the residue of her estate "to have, hold, possess and dispose of the same for her own use and benefit absolutely." Then follows this significant statement: "In making this last bequest and devise to my sister * * * she has agreed with me that she will by her last will and testament bequeath and devise to Edith M. McGinn, as trustee * * * any and all of the property herein by me devised and bequeathed to her * * * that may remain in her possession at the time of her death."

■ It is apparent from a consideration of Mrs. Mc-Ginn's entire will, and from the evidence which we shall hereinafter mention, that the agreement referred to in the fourth paragraph is limited to the residue of Mrs. McGinn's estate. The lots in Maegley Highland were devised specifically to Miss Pater in the second paragraph of Mrs. McGinn's will, and therefore were not included in the residuum of her estate.

The expression, "this last bequest and devise", used by Mrs. McGinn in the fourth paragraph, refers, and is limited, to the property devised and bequeathed in that paragraph. Webster defines the word "last", when used as an adjective, as follows: "Being or remaining after all the others, similarly classed or considered, in time, place, or order of succession; following all the rest; final." Funk & Wagnalls' New Standard Dictionary gives substantially the same meaning to the word. The "bequest and devise" contained in the fourth paragraph are the last of the bequests and devises contained in the will. They are preceded by the devise of the lots in Maegley Highland and the bequest of $100 to Mrs. Little.

It was in consideration of Mrs. McGinn bequeathing and devising the residue of her estate to her sister that the latter agreed, according to the provisions of Mrs. McGinn's will, to bequeath and devise to Edith M. McGinn, trustee, "any and all of the property herein by me devised and bequeathed to her * * * that may remain in her possession at the time of her death." The phrase, "any and all of the property herein by me devised and bequeathed to her," refers to the property devised and bequeathed in the fourth paragraph of the will, where those words are found. Had Mrs. Mc-Ginn intended to include, in the agreement made with

Miss Pater, the lots in Maegley Highland, she undoubtedly would not have specifically devised them as she did. The fact that Mrs. McGinn devised and bequeathed the residue of her estate to her sister "to have, hold, possess and dispose of the same for her own use and benefit" indicates an intention on her part that Miss Pater should treat that property differently from the property specifically devised to her.

■ Bearing upon the question of whether there was a contract between Mrs. McGinn and her sister whereby the latter agreed to devise the lots in Maegley Highland to the McGinn heirs, we have the declarations of Mrs. McGinn made in the presence of Miss Pater that this was to become the property of the defendants upon the death of the surviving sister. Evidence of such declarations was admissible on the question whether there was such an agreement. *Schramm v. Burkhart,* 137 Or. 208, 2 P. (2d) 14; *Holman v. Lutz,* supra.

In the case last above cited, Edward Holman and Julia Holman, his wife, on the same day, executed separate wills containing identical and reciprocal provisions. Later, and again on the same day, both Mr. Holman and his wife executed codicils to their wills which also contained identical and reciprocal provisions. Mr. Holman predeceased his wife. Declarations made by him, after the execution of the wills and codicils, that the property, which he had devised and bequeathed to his wife, was to be her own to do as she wished with it, were admitted in evidence as bearing upon the question of whether there were mutual wills.

The testimony of the defendants, that Mrs. McGinn had stated many times that the McGinn home was to be theirs upon the death of the surviving sister, strongly

indicates that Mrs. McGinn did not intend to include that property in the contract with her sister.

■■ The fact that Miss Pater's 1936 will was executed at the same time that Mrs. McGinn's will was executed; that both Mrs. McGinn and Miss Pater were present at the time of the execution of the two wills, and that each knew the contents of the other's will, does not necessarily establish that the sisters acted pursuant to any agreement. *Taylor v. Wait,* supra; *Holman v. Lutz,* supra; *Edson v. Parsons,* supra. There is no evidence of any contract between the sisters whereby Miss Pater agreed to leave her entire estate, if she survived Mrs. McGinn, to the McGinn heirs. The complaint alleged that such a contract was made and the circuit court so held. Some of the property owned by Miss Pater at the time of her death was not acquired by her from Mrs. McGinn. The best evidence of the terms of the contract, if there was a contract, is Mrs. McGinn's will. The contract, as there set forth, refers, as we have already stated, only to the residuum of Mrs. McGinn's estate.

■ Regardless of whether Miss Pater had an agreement with Mrs. McGinn, as set forth in Mrs. McGinn's will, she acquiesced in the statement contained therein that such an agreement did exist by receiving, under the will, the residuum of Mrs. McGinn's estate, and was estopped from denying the existence of such an agreement. *Schafer v. Schafer,* 122 Or. 620, 260 P. 206, 59 A. L. R. 707; *Wilson v. Wilson,* 23 Tenn. App. 244, 130 S. W. (2d) 140; 31 C. J. S., Estoppel, § 110, p. 352.

■ The fourth paragraph of Mrs. McGinn's will, taken in its entirety, must be construed as a devise and bequest of the residue of Mrs. McGinn's estate to Miss Pater for her own use and benefit. Miss Pater acquired more than a life interest in that property. She, how-

ever, did not have the right to devise and bequeath it to anyone other than the McGinn heirs, nor did she have the right to give it away prior to her death. The gift of the automobile and the furniture and furnishings in the McGinn home by Miss Pater to the defendants, was contrary to, and in violation of, the provisions of that paragraph.

Plaintiffs have no interest in the lots in Maegley Highland, the one-half interest in lot 1, block 2, Shinn's Addition, which Miss Pater inherited from her deceased sister, Julia, nor to any of the other property which Miss Pater did not inherit from her sister, Mrs. McGinn. They are entitled to the Chevrolet automobile hereinbefore mentioned, the furniture and furnishings in the McGinn house, which Miss Pater inherited from Mrs. McGinn and gave to the defendants, to a one-half interest in the north 20.5 feet of the west 72 feet of lot 1, block 2, Shinn's Addition, or the proceeds from the sale thereof by the defendant-executors, all the other assets of the estate of Miss Pater, deceased, which were received by Miss Pater from Mrs. McGinn's estate, (except the lots in Maegley Highland) and the unexpended proceeds from the sale of any property so received, after deducting therefrom the expenses of Miss Pater's last illness, funeral expenses, and expenses of probate apportionable to that part of Miss Pater's estate. The expenses of Miss Pater's last illness and funeral expenses should be paid from that portion of her estate not received from her sister, if sufficient.

The decree appealed from is modified, as herein pointed out, and the cause remanded to the circuit court for further proceedings not inconsistent with this opinion. No costs will be allowed in this court.