MRS. JANE ZUSSMAN, Complainant-Appellee, v. LAKE-SPIRO-SHURMAN, INC., Defendant-Appellant.—469 S.W.2d 671.

Western Section. June 25, 1970.

Rehearing Denied August 28, 1970.

Certiorari Denied by Supreme Court December 21, 1970.

114

Cooper Turner, Canada, Russell & Turner, Memphis, for defendant-appellant.

Thomas R. Prewitt, Edward M. Kaplan, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, for complainant-appellee.

CARNEY P.J. Complainant below, Mrs. Jane Zussman, was awarded a verdict of $71,000 by the jury in Chancery Court against the defendant, Lake-Spiro-Shurman, Inc. of Memphis, Tennessee, for damages arising out of the alleged breach of an employment contract.

The defendant, Lake-Spiro-Shurman, Inc., has appealed and assigned error.

The defendant is an advertising agency whose principal client is Plough, Inc. Plough, Inc.'s annual advertising account with defendant approached 15 million dollars. Of course, this amount included cost of television and radio talent, time and newspaper advertising, etc.

The complainant, Mrs. Jane Zussman, age 50, had worked for the defendant 26 years continuously prior to December 30, 1967, in the role of Copy Chief and Creative Director. Prior to December 30, 1967, the complainant had had no written contract of employment and had no security of tenure of employment other than on a year-to-year basis. For one year prior to December 30, 1967, the complainant had repeatedly asked her employer, Mr. Spiro, for a written contract of employment giving her some job security as well as tax benefits.

On December 30, 1967, the complainant, Mrs. Jane Zussman, and defendant finalized a written contract of employment called "Deferred Compensation Plan." The purposes and underlying reasons for the execution of the contract were set out in the preamble as follows:

"WHEREAS, Mrs. Zussman is and has been employed by The Company in excess of twenty-six years and has performed valuable services as an executive in recent years;

WHEREAS, she possesses great artistic ability in the advertising business and intimate knowledge of The Company, its operating methods, personnel, and client problems; and

WHEREAS, The Company desires to secure her future services, to secure her commitment to furnish advisory services to The Company following the termination of her employment with The Company, and to secure her agreement not to compete with The Company now or following her termination of employment with The Company.''

Under the contract complainant's salary was set at $24,000 per year; one-half payable at the rate of $1,000 per month, the other one-half or $1,000 per month was to be used to buy mutual funds and not paid to the complainant until (1) she terminated her employment, (2) she became a part-time employee, or (3) she became partially or totally disabled.

Complainant was guaranteed employment for five years and could be fired only for good cause. Upon termination of her contract, complainant agreed not to go into competition with the defendant Company for five years after January 1, 1973, during which time the complainant was obligated to furnish consultation services to the defendant.

The contract was prepared by the defendant's attorney or its tax counsel. Beginning January 1, 1968, the complainant was paid $1,000 per month less withholding deductions, etc. and the other $1,000 monthly payment was paid by the defendant to a broker for investment in a mutual fund for complainant. Complainant signed a written authorization to handle the deferred compensation by the purchase of mutual funds. This investment was in a fund called ''1 Williams Street Fund.''

The contract contained a provision that it was contingent upon receiving a favorable ruling from the

Internal Revenue Service to the effect that the deferred portion of the compensation would not be taxable to Mrs. Zussman until payments were actually received by her under the agreement and that the deferred portion of the compensation would not be deductible by the company until received by Mrs. Zussman. On February 2, 1968, accountants for defendant made application to the Internal Revenue Service for a ruling as to the legality of the deferred compensation plan.

In June, 1968, before a ruling had been received from the Internal Revenue Service, Mr. Lanigan, new president of the defendant Company, withdrew the request for a ruling.

Plough, Inc.'s business with defendant increased. In April, 1968, Lake-Spiro-Shurman, Inc. decided to beef up its personnel and hired Mr. Lanigan from New York to become the new president of Lake-Spiro-Shurman, Inc. in Memphis. Mr. Spiro became chairman of the board. Mr. Lanigan was authorized and expected to hire a number of new writers and advertising specialists for the defendant Company.

Mrs. Zussman was the only employee of Lake-Spiro-Shurman, Inc. who had a written contract of employment. When Mr. Lanigan first learned of the contract, he decided then and there that such contract could not continue because none of the other employees, including himself, had any written contract of employment but were simply employees at will. He set about immediately to cancel the contract.

Several conferences ensued between Mr. Lanigan and the complainant, Mrs. Zussman. During the course of one or more conversations Mr. Lanigan told the com-

plainant that her contract was unenforceable and that he would not follow it. Mrs. Zussman testified that on June 4, 1968, in a conversation with Mr. Lanigan she told him that she would never agree to withdrawing the contract but that if he would come up with something better she would be willing to accept it provided she had equal benefits and that she kept the five-year employment provision of the contract.

Mr. Lanigan told her that he would raise her pay to $25,000 per year; guarantee her a bonus of $2,500 per year and make her vice president of the company and that this would be better than the contract which she had. Without the knowledge of the complainant, Mr. Lanigan ordered a withdrawal of the request for approval from the Internal Revenue Service of the December 30, 1967, contract. He also ordered the broker to sell the interests of Mrs. Zussman in 1 Williams Street Fund without her knowledge or consent.

On June 13, 1968, Mrs. Zussman received a check for $691.17 which represented one-half of her monthly salary on the $25,000 basis less deductions. Up until that time she had not received during the year 1968 a check in the middle of the month because the mid-month check had previously gone into the investment fund under the written contract of December 30, 1967. She received an additional check on July 15, 1968, and one on August 15, 1968. The checks on the first of each month were substantially in the same amount as she had been receiving under the December 30, 1967, agreement.

Mrs. Zussman cashed at least two of these mid-monthly checks and authorized the bookkeeping department to make additional withholding therefrom based on antici-

pated income of her husband who was an M.D. practicing in Memphis, Tennessee. The combined income of Mrs. Zussman and her husband for 1967 was approximately $50,000 and they were in the 50% tax bracket.

Mrs. Zussman continued to press Mr. Lanigan to reduce the new contract to writing. On July 26, 1968, President Lanigan handed a written memorandum to Mrs. Zussman stating that the deferred compensation plan dated December 30, 1967, never materialized and it was not approved by the Internal Revenue Service and that he and Mrs. Zussman had agreed to cancel it and that in lieu thereof her salary had been increased to $25,000 a year with a 10% bonus and that she had been made vice president-creative.

On July 29, 1968, Mrs. Zussman replied by a similar memorandum denying that the written contract of date December 30, 1967, had been cancelled and reiterating her prior position that she would not agree to a cancellation of the deferred compensation plan until "something equally or more beneficial was offered to me." Mrs. Zussman also remitted the extra payments which she had been receiving for the months of June and July with the request that they be put into the investment account under the December 30, 1967, Deferred Compensation Plan.

Tensions between Mrs. Zussman and Mr. Lanigan increased. On August 21, 1968, Mrs. Zussman wrote a note to Mr. Lanigan expressing unwillingness to accept any modification of the contract dated December 30, 1967. On August 23, 1968, Mr. Lanigan formally fired Mrs. Zussman, returned to her the money which she had handed over to him for investment in the investment account

and also remitted to her the balance of her salary for the month of August, 1968, along with her interest in the investment account which had been sold without her knowledge in the total amount of $2,250.

On January 8, 1969, Mrs. Zussman filed her suit in the present cause. Defendant's principal defense was that the contract had been rescinded by mutual agreement and that Mrs. Zussman had been fired for just cause, namely inefficiency and refusal to cooperate with the new officials of the defendant corporation.

Three issues of fact were submitted to the jury:

"I.

Did the Complainant agree to unconditionally cancel or rescind the December 30, 1967 written agreement and substitute therefor an oral contract of employment without regard to length of term on a yearly salary of $25,000.00 with a guaranteed bonus of $2,500.00 and election to the office of Vice-President Creative?

Answer 'Yes' or 'No.'

II.

If your answer to Issue No. I is 'No,' then answer this question:

Was there good cause for Complainant's discharge?

Answer 'Yes' or 'No.'

III.

If your answer to Issues I and II are 'No' state the damages sustained by the Complainant as the result of the breach of her employment contract."

To Issue No. I the jury answered "No." To Issue No. II they answered "No." To Issue No. III they answered, "$71,000.00." The defendant made a motion for a decree notwithstanding the verdict and in the alternative for a new trial both motions being overruled and judgment was entered on the verdict of the jury.

The defendant offered three special requests and we copy the same as follows:

(1) "Knowing acceptance of benefits under an agreement, whether oral or written, is an affirmance of the agreement and one so accepting benefits must accept and be bound by all other terms and conditions of the agreement."

(2) "If you find complainant knowingly accepted salary on the basis of $25,000 per year under the oral agreement defendant contends was made with her, then you will answer issue No. 1 'yes.' "

(3) "Knowing acceptance of benefits under an agreement, whether oral or written, is an affirmance of the agreement and one so accepting benefits must accept and be bound by all other terms and conditions of the agreement.

In accordance with this rule, if you find complainant knowingly accepted salary on the basis of $25,000 per year under the oral agreement defendant contends was made with her, then you will answer issue No. 1 'yes.' "

Assignments of error I and II insist that His Honor the Chancellor was in error in failing to grant defendant's motion to withdraw the issues from the jury and in overruling defendant's motion for a decree notwithstanding the jury's verdict. In support of these two assign-

ments of error the appellant-defendant insists that one who knowingly accepts the benefits of a transaction or of an instrument or contract accepts also all of its terms and conditions, whether beneficial or burdensome, and having so accepted the benefits, will be estopped to claim the benefits without accepting the burdens and will be estopped to question the validity or effect of the transaction or agreement. In support of this contention the appellant cites the following authorities:

31 C.J.S. Estoppel secs. 109, 110(2)

Estoppel and Waiver, 28 Am.Jur.(2) 59

Hoyt v. Hoyt, 213 Tenn. 117, 129, 372 S.W.2d 300

Molloy v. City of Chattanooga, 191 Tenn. 173, 232 S.W. 2d 404

Doty v. Chattanooga Union Railroad, 103 Tenn. 564, 53 S.W. 944

Wyatt v. Brown, 39 Tenn.App. 28, 281 S.W.2d 64

Balderacchi v. Ruth, 36 Tenn.App. 421, 425, 256 S.W.2d 390

Wilson v. Wilson, 23 Tenn.App. 244, 130 S.W.2d 140

Beaty v. Brock & Blevins Co., 6 Cir., 319 F.2d 43(6).

The proposition of law relied upon by the appellant is not applicable to the facts of the case at bar. The complainant, Mrs. Zussman, testified in substance that she did agree to a modification of her written contract of December 30, 1967, provided she was given monetary increases equal to the benefits taxwise already provided for her under the deferred payment provisions of the written contract and provided that she retained her five-year tenure provision. Her husband, Dr. Zussman, was considerably older than she and had a heart condition.

Her mother was dependent on her for support and Mrs. Zussman wanted security. It took her a year to get the written contract of December 30, 1967, finalized.

Mr. Lanigan told Mrs. Zussman that the written contract of December 30, 1967, had never become operative because the IRS had never approved it. He did not tell her that he had requested a withdrawal of approval. He did not tell her that he had ordered the mutual funds invested for her benefit sold. He did not pay over to Mrs. Zussman the proceeds of the sale of the mutual funds until she was fired in August, 1968. Mr. Lanigan testified that Mrs. Zussman agreed to accept an annual increase in salary of $3,500 and a change in title to vice president as a consideration for rescinding or cancelling the written contract of December 30, 1967, under which she had tax benefits from deferred payments and had a five-year tenure of employment.

A tax expert testified that the deferred compensation contract would have been approved by the Internal Revenue Service if request for approval had not been withdrawn by defendant. He stated that he based his testimony upon the approval which the IRS had given to a similar contract previously. The conflict in testimony and theories of the complainant and defendant made questions of fact for the jury. We hold the jury could reasonably have found that the retention by Mrs. Zussman of the mid-monthly payments was not inconsistent with her agreement to make a modification of the written contract of December 30, 1967, so long as the new agreement did not ultimately redound to her detriment financially and so long as the new agreement contained a provision for five years tenure.

The law applicable to the case at bar is well stated in our Tennessee Appeals case of Balderacchi v. Ruth, 36 Tenn.App. 421, 256 S.W.2d 390:

"Modification of an existing contract cannot be accomplished by the unilateral action of one of the parties. There must be the same mutuality of assent and meeting of minds as required to make a contract. New negotiations cannot affect a completed contract unless they result in a new agreement. Neilson, etc., Canning Co. v. F. G. Lowe & Co., 149 Tenn. 561, 260 S.W. 142. And a modification of an existing contract cannot arise from an ambiguous course of dealing between the parties from which diverse inferences might reasonably be drawn as to whether the contract remained in its original form or was changed. Anderson v. Reed, 133 Okl. 23, 270 P. 854; Continental Supply Co. v. Levy, 121 Okl. 132, 247 P. 967.

We think the present case falls directly within the principle of these cases. The record shows nothing more than the unilateral action of defendant in reducing plaintiff's salary without terminating his employment. Until the original contract was terminated by mutual assent or by notice of one of the parties, plaintiff had a right to insist upon payment of the full compensation provided by the contract and to accept for credit on salary due any payments received from defendant.

Defendant had the burden of showing the modification of the contract by mutual assent or of establishing facts either constituting an accord or forming the basis of an estoppel. The proof fails to show either. There

was no modification since the proof clearly shows that plaintiff protested and promptly notified defendant that the full salary would be claimed. For the same reason there was no basis for an estoppel. Defendant could have put the matter at rest by making the checks show that they were tendered as in full payment of accrued salary. There is no showing that this was done and, under the presumption that favorable evidence in defendant's possession would have been brought forward, we must assume that the checks were not so marked.''

We hold that there was sufficient evidence from which the jury could reasonably find that Mr. Lanigan fired Mrs. Zussman not because of inefficiency and lack of co-operation but because she refused to surrender the benefits which she had obtained under the December 30, 1967, contract. Assignments of error I and II are, therefore, respectfully overruled.

We further hold that in view of the issues of fact submitted to the jury without objection by either party, His Honor the Chancellor correctly refused to grant defendant's special requests Nos. 1, 2, and 3. These charges, if given, would have tended to confuse the jury in deciding the issues of fact presented to them by the Chancellor. Assignments of error III, IV, and V are therefore respectfully overruled.

A decree will be entered affirming the decree of the lower Court and defendant-appellant will be taxed with the costs in the Court below and in this Court.

Matherne and Todd, JJ., concur.

## ON PETITION TO REHEAR

On June 25, 1970, this Court announced an opinion affirming a judgment of $71,000 rendered against the defendant below, Lake-Spiro-Shurman, Inc., of Memphis, Tennessee, in the Chancery Court of Shelby County. The defendant-appellant, Lake-Spiro-Shurman, Inc., has filed a petition to rehear based upon an alleged error of this Court in reciting that the issues of fact were submitted to the jury without objection of either party and that the Chancellor, therefore, correctly refused to grant defendant's special requests Nos. 1, 2, and 3.

Solicitor for defendant made a motion to withdraw the issues from the jury at the conclusion of all the evidence which motion was overruled by His Honor the Chancellor. Thereafter, the Court discussed with solicitors for both parties the phraseology of the issues to be submitted to the jury. The solicitors agreed to the issues as finally submitted by His Honor the Chancellor.

From page 296 of the transcript we quote as follows:

"MR. TURNER: Roughly what I said was this, that you would make this issue, did the complainant agree to unconditionally cancel or rescind the December 30, 1967, written agreement and to substitute in lieu thereof a contract of employment, an oral contract of employment at will on a yearly salary of $25,000.00 with a guaranteed bonus for the year 1968 of $2,500.00 and election to the office of vice president creative. There is no contention here, as far as I am concerned that we say that she did agree to cancel and this is what we and she agreed to put in the place of it.

THE COURT: That's right.

MR. TURNER: She says I didn't agree to cancel it unless I got something better. If she is right, they will answer it no. If we are right, they will answer it yes, I assume. That is the best I can think of.

THE COURT: All right, the way I have it, did the complainant agree to unconditionally cancel or rescind the December 30, 1967, written agreement and substitute therefor an oral contract of employment at will on a yearly salary of $25,000.00 with guaranteed bonus of $2,500.00 and election to office of vice president creative.

MR. TURNER: I think the only thing we might change there if the Court please, instead of saying a contract at will, we might say an oral contract without definite term.

MR. PREWITT: Or without regard to term.

MR. TURNER: Without regard to term, that is all right. Then you don't get into any argument about whether it is at will or for a year. I want the record to show I was suggesting these issues in spite of the fact I say there is not any issue to go to the jury.

THE COURT: All right, I understand that and we are not necessarily doing this by agreement with anybody. We are just protecting the record."

It is true that Mr. Turner, solicitor for the defendant, did object to any issues being submitted to the jury. However, after that motion was overruled, he did concur in the phraseology of the issues as actually submitted by His Honor the Chancellor to the jury. He offered no issues to be submitted to the jury other than those submitted by His Honor the Chancellor.

We are of opinion that we reached the correct result in our former opinion in this case and the petition to rehear is respectfully denied at the cost of the petitioner.

Matherne and Todd, JJ., concur.